No. 111,573

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GREGORY MILLER,
*Appellant*.

SYLLABUS BY THE COURT

1.

Restitution can be awarded only for damages or losses caused by the defendant's crimes of conviction or otherwise agreed to by a defendant in a plea agreement.

2.

When a defendant is convicted for burglary, restitution cannot be awarded for the loss of items stolen during the burglary when the defendant was not convicted for the theft of those items, unless the defendant agrees to the restitution.

Appeal from Sedgwick District Court; WILLIAM SIOUX WOOLLEY, judge. Opinion filed August 28, 2015. Affirmed in part and vacated in part.

*Kimberly Streit Vogelsberg*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., SCHROEDER and GARDNER, JJ.

LEBEN, J.: Gregory Miller appeals the district court's order that he pay $4,700 in restitution for plumbing and electrical repairs to the owner of a home where Miller committed burglary and theft. The district court ordered the restitution after finding that it was the result of Miller's crime.

But restitution can only be ordered when the damages or losses are caused by the defendant's crimes of conviction or when a defendant agrees to them in a plea agreement, and neither situation applied to the plumbing and electrical damage claimed here. Miller had pled guilty to a charge that he stole a machete and baby powder, not plumbing or electrical items. And burglary is simply the unauthorized entering into or remaining within a dwelling with the intent to commit a theft—not damage to property or theft itself. Accordingly, the district court went beyond its authority in ordering the restitution, and we vacate the restitution award.

FACTUAL AND PROCEDURAL BACKGROUND

Gretchen Horner reported to the police that in June 2013, she had gone to check on a vacant house owned by her brother, Clifford Slocum, and found the back door open. Horner said she had found Miller inside, holding a large knife. She stated that she had been to the house 3 days before and had found the lock intact and the property secure at that time. Slocum inspected the house and told police that there were holes in the drywall and that a large amount of copper piping had been cut from the home. The police arrested Miller and found he had a receipt for the sale of copper piping.

The State charged Miller with burglary, a severity-level-7 felony, and theft of property valued at less than $1,000, a severity-level-9 felony. The State's written complaint said that the theft charge was for stealing a machete and baby powder. It was a felony charge because Miller had previously been convicted of theft.

2

Miller pled guilty to both charges. Entering a guilty plea to felony charges is a serious matter, and the district court holds a hearing to make sure that the defendant is voluntarily entering the plea and has an adequate understanding of the relevant circumstances. The court also must satisfy itself that there is a valid factual basis for the plea, meaning that all elements of the crime charged are present. See K.S.A. 2014 Supp. 22-3210(a)(4); *State v. Edgar*, 281 Kan. 30, 42-43, 127 P.3d 986 (2006).

At the plea hearing in Miller's case, the district judge read aloud the charges as stated in the State's written complaint. Miller corrected the judge when he misread the street address at which the burglary occurred, but he otherwise agreed that all of the facts charged were true. The judge thus confirmed that Miller agreed he had committed a burglary and that he had stolen "a silver machete" and "baby powder," depriving the owner of property "of a value of less than $1,000." After the prosecutor also agreed to these statements as the factual basis for Miller's guilty pleas, the court accepted Miller's pleas and found him guilty of both charges. The parties' plea agreement also provided that Miller would pay restitution "in an amount to be determined by [the] time of sentencing."

But the parties had not reached agreement on a restitution amount when the case came before the court for sentencing on January 16, 2014. The court sentenced Miller to 24 months of probation with an underlying 16-month prison sentence that Miller would serve if he didn't successfully complete his probation (a 16-month sentence for burglary and a concurrent 6-month sentence for theft). The district court then continued sentencing for an evidentiary hearing on restitution.

At the evidentiary hearing, held March 21, 2014, Slocum said that he had inspected the property after his sister had found Miller there. He said someone had cut or torn through the drywall to remove copper piping and wiring in many different rooms in

3

the house in the 3 or 4 weeks since he had last been there. He added that city code requirements would force him, when making repairs, to upgrade the wiring in his home.

At one point, after some confusion between Slocum and one of the attorneys who was asking Slocum questions, the judge provided a summary of his understanding of Slocum's testimony and confirmed it with Slocum:

"THE COURT: I will tell you what I understood him to say. And then if somebody thinks it's wrong, you can tell me.

"Electrical and plumbing were damaged as a result of [Miller's] actions. So that would include the electrical bill and that would include the plumbing bill. What he said is that at the time that the work was initially done in the house, I don't know, five, ten, twenty years ago, it was up to code based on the code requirements at that time. However what he's saying is since that time, code requirements have changed. So you cannot legally put it back exactly the way it was because code requirements required him to do something different. The differences are what he is explaining to you needs to be done. It is because of the code requirements that have changed. That's what I've heard him to say.

"Is that what you're saying, sir?

"[MR. SLOCUM]: Yes, sir."

After the evidence was presented, the district court said that the issue was "the measure of damages, and it's the damages that were incurred as a direct result of the crime." The district court had admitted into evidence bids to repair the damages caused by the removal of the copper wiring and pipes: $2,500 for electrical work and $2,200 for plumbing repairs. The district court concluded that these bids were "damages that were caused as a direct result of Mr. Miller's actions." The court ordered Miller to pay Slocum the full amounts from the bids for a total of $4,700 in restitution.

4

Miller has appealed to this court.

ANALYSIS

The district court's authority to order restitution in a criminal case is established by statute. K.S.A. 2014 Supp. 21-6604(b)(1) allows the court to order the defendant to pay restitution as part of the sentence. The statute provides that the restitution amount "shall include, but not be limited to, damage or loss caused by the defendant's crime." K.S.A. 2014 Supp. 21-6607(c)(2) allows the court to order restitution payments as a condition of probation, as it did in Miller's case. This statute provides that restitution may be ordered "for the damage or loss caused by the defendant's crime."

The language of these statutes differs slightly as to what costs may be ordered as restitution. The sentencing statute, K.S.A. 2014 Supp. 21-6604(b)(1), is somewhat open-ended in its definition, saying that the amount "shall include, but not be limited to," the damage caused by the crime. The probation statute, K.S.A. 2014 Supp. 21-6607(c)(2), is more straightforward, providing authority for restitution only for damage caused by the crime. But these statutes were enacted together as part of the revised Kansas Criminal Code, are closely related, and should be construed together. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 919, 349 P.3d 469 (2015).

The Kansas Supreme Court interpreted the identical language in the prior Kansas Criminal Code in *State v. Dexter*, 276 Kan. 909, 80 P.3d 1125 (2003). In *Dexter*, the defendant was initially charged with seven counts of impairing a security interest, with each count tied to a specific vehicle. In a plea agreement, Dexter agreed to plead guilty to one count; in exchange, the State dismissed the other charges. But the State then sought restitution for the victim bank's loss on all seven vehicles. Our Supreme Court held that unless a defendant agreed otherwise in a plea bargain, restitution could only be ordered for losses "caused by the crime or crimes for which the defendant was convicted." 276

5

Kan. at 919. Since the defendant had not agreed to pay restitution for impairing the bank's security interest against the six vehicles at issue in the dismissed charges, the district court could not order restitution for those losses.

In *Dexter*, the court also cited its earlier ruling in *State v. Ball*, 255 Kan. 694, 877 P.2d 955 (1994), in support of the statement that a defendant could agree to pay restitution beyond the crimes for which he or she was convicted. As we have noted, the statutes refer to the damages "caused by the defendant's crime." In *Ball,* the court held that where the defendant is actually charged with several counts and agrees to pay restitution for each of the charged offenses in exchange for the State's agreement to dismiss some of the charges, the sentencing court still has authority to enter that agreed-upon restitution award. 255 Kan. at 701.

With that background, we turn to Miller's case. We review the district court's factual findings about the causal link between a crime and certain losses to see that it is supported by substantial evidence, but we review the district court's interpretation of the statutes authorizing restitution awards independently, without any required deference to the district court. *State v. Hall*, 298 Kan. 978, 989, 319 P.3d 506 (2014); *Dexter*, 276 Kan. at 912-13.

Miller's theft conviction involved only theft of a machete and baby powder; he was neither charged with nor convicted of theft of copper piping or wiring. So the theft conviction cannot support the restitution award.

As for the burglary conviction, we must first review what underlying facts are established based on that conviction. As charged and pled in this case, burglary is entering into or remaining without authority in a dwelling with the intent to commit a theft there. See K.S.A. 2014 Supp. 21-5807(a)(1).

6

To the extent Miller might have damaged the property merely by entering it without authority—such as by breaking a door or a lock—restitution might be awarded for that damage because it would have been caused by the act of burglary. But merely entering or remaining in the dwelling does not by itself cause a loss of copper piping or wiring.

Even if we surmise that it was the underlying intent to commit theft of the copper wiring or plumbing that made his unauthorized entry a burglary, that would not affect the outcome here: The mere *intent* to steal something doesn't cause the loss. It's the act of *theft* that would cause the loss, and Miller was neither charged nor convicted of theft of the copper items.

The district court's factual finding that these losses were the "direct result of Mr. Miller's actions" is supported by the evidence. But these losses were not the direct result of Miller's crimes of conviction. Accordingly, the district court erred by ordering restitution for the damages caused by removal of the copper wiring and plumbing.

Our ruling is supported by a recent, though unpublished, decision of our court, *State v. Chandler*, No. 107,111, 2013 WL 1234223 (Kan. App. 2013) (unpublished opinion). In that case, a highly collectible Lincoln penny had gone missing, and at about the same time, the owner's file cabinet had been broken into and a coin collection worth $13,783 was stolen. Chandler was caught for stealing the penny when he showed it to a local coin dealer, who recognized it and returned it to the owner. The State charged Chandler with theft of the penny (a felony because the single coin was worth more than $1,000) and criminal damage to property for damage to the file cabinet. But the State did not charge Chandler with theft of the coin collection. The district court ordered restitution for the coin collection, but our court vacated the restitution order because Chandler was never charged with stealing the coin collection and had not agreed to pay restitution for it in a plea agreement. 2013 WL 1234223, at *2.

7

Our court's rulings here and in *Chandler* deal only with what may be ordered as restitution in a criminal case, where the State uses its muscle to enforce restitution and the defendant faces potential probation sanctions for the failure to make the restitution payments. Within the time frames provided for civil lawsuits, a person can bring his or her own lawsuit for damages another person causes. But our statutes do not provide for restitution orders beyond those caused by the crime of conviction without the defendant's agreement.

Miller has raised one additional argument on appeal—that the use of his past convictions to calculate his guideline sentence violated his constitutional rights because the past convictions weren't proved to a jury. But Martin recognizes that our Supreme Court has rejected this argument in other cases. *E.g.*, *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013); *State v. Ivory*, 273 Kan. 44, 46-47, 41 P.3d 781 (2002). The district court did not err when it used Miller's prior convictions to calculate his sentence.

The district court's restitution order is vacated, but we otherwise affirm the district court's judgment.